### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **DAVID J. BIRENBAUM,** | : | **Bankruptcy No. 05-20640 BM** |
| | : | |
| | : | |
| **Debtor** | : | **Chapter 7** |

**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***

| | | |
|---|---|---|
| **SHERYL BIRENBAUM, DONALD** | : | |
| **SILVER, and ELAINE SILVER,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **Adversary No. 05-2529 BM** |
| | : | |
| **DAVID J. BIRENBAUM,** | : | **Complaint To Determine The** |
| | : | **Dischargeability Of Debts And** |
| **Defendant** | : | **Objecting To Discharge** |

Appearances:   Richard R. Tarantine, Esq., for Plaintiffs
Donald R. Calaiaro, Esq., for Defendant

### <u>MEMORANDUM OPINION</u>

Sheryl Birenbaum and Donald and Elaine Silver, plaintiffs in this adversary action, seek determinations that certain debts owed to them by debtor David J. Birenbaum are excepted from discharge by § 523(a)(5) or § 523(a)(15) of the Bankruptcy Code.

Sheryl Birenbaum seeks a determination in Count I of the complaint that certain debts owed by debtor to her or to their children are in the nature of alimony, maintenance or support and consequently are excepted from discharge by § 523(a)(5).   Debtor concedes that some of the debts are in the nature of alimony, maintenance or support but denies that certain others so qualify and are excluded from discharge by this provision.

Donald and Elaine Silver seek a determination in Count II that another debt owed by debtor is excluded from discharge by either § 523(a)(5) or § 523(a)(15).  Debtor denies that either of these provisions excludes the debt from discharge.

Judgment will be entered in favor of Sheryl Birenbaum and against debtor with respect to Count I of the complaint.  All of the debts at issue in Count I fall within the scope of § 523(a)(5).  Judgment will be entered in favor of debtor and against Donald and Elaine Silver with respect to Count II of the complaint.  The debt at issue in Count II falls within the scope of neither § 523(a)(5) nor § 523(a)(15).

## – FACTS –

Debtor and Sheryl Birenbaum were married in 1984.  Three children, presently ranging in age from fourteen to eighteen years, were born as a result of their marriage.

Donald and Elaine Silver, the parents of Sheryl Birenbaum, loaned debtor and Sheryl Birenbaum the sum of $200,000 in 1994 to purchase a residence for themselves and their children.  The debt was never fully repaid.

When their marriage disintegrated, Sheryl Birenbaum commenced a divorce proceeding against debtor in 1999 in the Circuit Court in and for Miami-Dade County, Florida.

Debtor and Sheryl Birenbaum entered into a settlement agreement on June 20, 2000, which ostensibly resolved all outstanding issues in the divorce proceeding.  They agreed, among other things, that debtor would:

(1)  pay child support in the amount of $2,167 per month directly to Sheryl Birenbaum until their children reached the age of majority; as each child

reached his or her majority, the amount debtor was to pay for the other children would be adjusted.

(2)  pay alimony to Sheryl Birenbaum in the amount of $2,000 per month for a period of four years; the obligation would terminate in the event either of them died during that period;

(3)  provide health insurance for the children, and pay for reasonable uncovered medical and dental expenses;

(4)  provide medical and dental insurance for Sheryl Birenbaum until she remarried or found employment which provided such insurance;

(5)  continue making monthly lease payments until September of 2001 on an automobile driven by Sheryl Birenbaum and after that pay $400 per month for a period of six years for an automobile for her;

(6)  establish a pre-paid college education fund for each child, including tuition and room and board, in an amount equal to what it would cost for that child to attend a state university in Massachusetts;[1] in the event a child did not attend a university for any reason, debtor would be entitled to a refund of the amount he had set aside for that child; and

(7)  pay the sum of $5,000 for each child's Bar or Bat Mitzvah celebration, plus $50 per month for each child's enrollment in Hebrew school.

They also agreed that Sheryl Birenbaum would be the primary residential parent and that debtor would have the right to have them visit him at his expense.

Debtor and Sheryl Birenbaum further agreed that debtor would sell a specific parcel of real property he owned.   David Silver, Sheryl Birenbaum's father, would receive approximately $165,000 from the net sale proceeds.

The Family Division of the Circuit Court in and for Miami-Dade County, Florida, issued a divorce decree on July 20, 2000.  The above settlement agreement was ratified

---

[1]  By the time the settlement agreement was reached, Sheryl Birenbaum and the three children had moved to and were residents of Massachusetts. They presently reside with the Silvers.

and incorporated into the divorce decree.  Neither debtor nor Sheryl Birenbaum appealed the decree.

At the time of the settlement agreement, Sheryl Birenbaum had a part-time job and was earning approximately $24,000 per year.  Debtor was a vice-president, director and shareholder of Pittsburgh Brewing Company.  His compensation consisted of an annual salary of $72,000 plus stock options.  The record does not indicate how much education either of them has.

David and Elaine Silver commenced lawsuits against debtor in the year 2003 for failing to repay the $200,000 loan they had made in 1994 to debtor and Sheryl Birenbaum to purchase a residence for themselves and their children.  Although she too was liable for the debt owed to her parents, the Silvers did not name their daughter as a co-defendant. They subsequently obtained two judgments against debtor totaling $206,774.   The judgments remain unsatisfied.

Debtor filed a voluntary chapter 7 petition on January 19, 2005.  The schedules accompanying the petition list assets, all personalty, with a total declared value of $12,270. He claimed exemptions in all of the assets listed on the schedules.

Debtor's schedules also list liabilities, all of them unsecured, totaling $502,364.80. With the exception of $6,000 he owes to the Internal Revenue Service for unpaid taxes, all of the scheduled debt is owed to general unsecured creditors.  Sheryl Birenbaum is listed as having a disputed claim in an unknown amount for "equitable distribution and/or alimony; car expenses; daughters [sic] Bat Mitzvah; college; [and] health insurance for ex-

wife". Donald and Elaine Silver are listed as having undisputed claims totaling $206,774 arising out of the above judgments in their favor.

The schedules further indicate that debtor was employed as a loan officer at the time of the bankruptcy filing and has remarried since he and Sheryl Birenbaum were divorced. The record does not indicate whether Sheryl Birenbaum has remarried.

Sheryl Birenbaum and Donald and Elaine Silver commenced this adversary action against debtor on April 26, 2005.

Sheryl Birenbaum seeks a determination in Count I of the complaint that debtor's obligations under the settlement agreement to pay alimony and child support, medical insurance for herself and the children, to create a college education fund for each child, to pay for the Bar and Mat Mitzvah celebrations for their children, and to pay for an automobile for her use are excluded from discharge by § 523(a)(5) of the Bankruptcy Code.

David and Elaine Silver seek a determination in Count II of the complaint that a debt owed by debtor is also excepted from discharge by § 523(a)(5) or § 523(a)(15).

The matter has been tried[2] and is now ready for decision.

## – ANALYSIS –

Debtor concedes that the debts he owes for alimony and child support and for medical insurance for Sheryl Birenbaum and the children are excepted from discharge by § 523(a)(5). Debtor denies, however, that the debts he owes for the college education

---

[2.] Donald and Elaine Silver, who are elderly and allegedly in poor health, did not attend the trial and did not testify.

fund for each child, for their Bar and Bat Mitzvah celebrations[3] and for enrollment in Hebrew school, and for an automobile leased by Sheryl Birenbaum are excluded from discharge.  In addition, he denies that the debt about which the Silvers have complained arose out of the above marriage settlement agreement and insists that said debt is excepted from discharge by § 523(a)(5) or § 523(a)(15).

Debtor and Sheryl Birenbaum and the Silvers stipulated at the commencement of trial that to the extent any of the debts are not discharged, this court need not undertake to determine the amount of those debts.  Such a determination, they stipulated, ought to be reserved for the state court having jurisdiction to enforce the divorce decree.

## – COUNT I –

Section 523(a)(5) of the Bankruptcy Code provides in relevant part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt --- ....
   (5) to a ... former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a ... divorce decree ..., or property settlement agreement, but not to the extent that --- ...
      (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5).

To give a debtor in bankruptcy a "better chance" at a "fresh start", the nineteen exceptions to the discharge of a debt set forth at § 523(a) are strictly construed in favor of the debtor and against the objecting creditor.  This general policy is tempered

---

[3.] Debtor complied with the settlement agreement and paid for the Bar Mitzvahs of his two sons.  He did not, however, pay for the Bat Mitzvah of his daughter, who is the youngest of their three children.

somewhat, however, if the debt at issue arose in a divorce proceeding.  Congress decided when it enacted § 523(a)(5) to protect spouses and children where their support by the debtor is involved. *Matter of Crosswhite*, 148 F.3d 879, 881-82 (7th Cir. 1998).  The policy underlying § 523(a)(5) favors enforcement of such obligations over providing a debtor with a "fresh start". *Williams v. Kemp (In re Kemp)*, 232 F.3d 652, 653 (8th Cir. 2000).

Because they object to the discharge of the debts owed by debtor, Sheryl Birenbaum and the Silvers have the burden of proving that the debts are excepted from discharge by § 523(a)(5). *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 761 (3d Cir. 1990).  They must do so by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 659-61, 112 L.Ed.2d 755 (1991).

Federal rather than state law determines if an obligation satisfies the requirements of § 523(a)(5).  It may so qualify under federal law while not so qualifying under state law. *Gianakas*, 917 F.2d at 762.

How an obligation is characterized in an agreement between spouses or in a court order is not necessarily dispositive in determining its "true nature" for purposes of § 523(a)(5).  We must "look beyond the label" attached to an obligation by the parties or the court. *Id*.

Our inquiry is limited to considering the facts as they existed when the obligation arose. *Id*.  Subsequent events, such as a change in the financial situation of one or both spouses, are not relevant in this regard. *Brown v. Mills (In re Mills)*, 313 B.R. 395, 399 (Bankr. W.D. Pa. 2004).

Whether an obligation is in the nature of alimony, maintenance or support depends on the intention extant when the obligation was created. *Gianakas*, 917 F.2d at 762.  If the relevant document giving rise to the obligation is an agreement between spouses which, as is the case here, was incorporated into a divorce decree, we must endeavor to determine their intention when arriving at the agreement. *In re Mills*, 313 B.R. at 399.

Three "indicators" should be considered when determining their intention at that time and, hence, the "true nature" of the resulting obligation.

We first should consider the language and substance of the relevant instrument or document in the context of surrounding circumstances, taking extrinsic evidence into account if necessary.  Even an obligation denominated as equitable distribution may qualify as alimony, maintenance or support, as a divorce court frequently will adjust the former depending on the nature and amount of marital assets available for distribution. *Gianakas*, 917 F.2d at 762.

We also should consider the respective financial situations of spouses *at the time the obligation was created*.  Relevant considerations may include their respective educations, whether one of the spouses has custody of their minor children, and was unemployed or had a job that paid considerably less than the other spouse was paid in their job. *Id.*, 917 F.2d at 763.

Finally, we should consider the function the obligation served when it was created. An obligation that serves to maintain life's necessities "is indicative of a debt intended to be in the nature of support". *Id.*

*College Education Fund*

The eldest child of debtor and Sheryl Birenbaum is now eighteen (or nineteen) years old and recently completed his first year of college. The other two children have not yet completed their secondary educations.

Debtor was obligated by the settlement agreement to create a pre-paid college education fund for each child in an amount equal to what it would cost for that child to attend a state university in Massachusetts. With the exception of $250 to reserve a dormitory room, debtor has contributed nothing to the cost of the college education of the eldest child. Because debtor contributed nothing, the son had to take out a $20,000 education loan in his own name to pay for his first year of college. Sheryl Birenbaum was not involved in obtaining the loan.

Debtor concedes that the debt in question is in the nature of support for the son for purposes of § 523(a)(5). Because the debt in question is owed to the son and not to Sheryl Birenbaum, however, debtor insists that only the son has standing to raise the issue of its non-dischargeability pursuant to § 523(a)(5). According to debtor, Sheryl Birenbaum lacks standing to pursue the dischargeability of the debt in this adversary action.

As support for this proposition, debtor points to the following statutory provision:

**§ 4327. Postsecondary educational costs.**

**(a) General rule**. – Where applicable under this section, a court may order either or both parents who are separated, divorced, unmarried or otherwise subject to an existing support obligation to provide equitably for the educational costs of their child whether an application for this support is made before or after the child has reached 18 years of age. The responsibility to provide for a postsecondary education for a child is a shared

responsibility between both parents. The duty of a parent to provide a postsecondary education for a child is not as exacting as the duty to provide food, clothing and shelter for a child of tender years unable to support himself.  This authority shall extend to postsecondary education, including periods of undergraduate or vocational education after the child graduates from high school.  An award for postsecondary educational costs may be entered only after the child or student has made reasonable efforts to apply for scholarships, grants and work-study assistance.

**(b) Action to recover educational expenses**. – An action to recover educational costs may be commenced:
(1) by the student if over 18 years of age; or
(2) by either parent on behalf of a child under 18 years of age, but, if the student is over 18 years of age, the student's written consent to the action must be secured ....

23 Pa. C. S. A.  § 4327.

Debtor's argument is fatally flawed in several respects.

To begin with, he has not made a case for why we should look to a Pennsylvania statute, in this instance 23 Pa. C. S. A.  § 4327, to determine who has standing to seek a determination that a particular debt is excepted from discharge by § 523(a)(5) of the Bankruptcy Code.  As was noted earlier, federal rather than state law governs the determination whether a debt is excluded from discharge by this provision of the Bankruptcy Code. *Gianakas*, 917 F.2d at 762.

The problem with relying on 23 Pa. C.S.A. § 4327 does not end there.  The Supreme Court of Pennsylvania has ruled that § 4327 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and therefore is unconstitutional. *Curtis v. Kline*, 542 Pa. 249, 253-60, 666 A.2d 265, 267-78 (1995).  Even if Pennsylvania law is relevant to determining whether Sheryl Birenbaum has standing to seek a

determination that debtor's obligation to create a college education for their eldest son is excluded from discharge by § 523(a)(5), debtor has not explained how a subpart of a statute that is unconstitutional provides the answer to the question of standing.

Finally, it makes no difference for present purposes whether Sheryl Birenbaum or the eldest son seeks a determination in this adversary action concerning the dischargeability of debtor's obligation to create a college education fund for him. As long as the obligation is in the nature of support for the eldest son, which debtor concedes that it is, the language of § 523(a)(5) excludes the obligation from discharge even if it is owed to the son rather than Sheryl Birenbaum. *Soffel v. Shaw (In re Shaw)*, 299 B.R. 107, 111 (Bankr. W.D. Pa. 2003).

### Bat Mitzvah Celebration

Debtor was obligated by the settlement agreement to pay in advance the sum of $5,000 for the Bar/Bat Mitzvah celebration for each child and the sum of $50 per month for each child's enrollment in Hebrew school.[4]

Debtor paid $5,000 for the Bar Mitzvah celebrations of each of his two sons. He paid nothing, however, for the Bat Mitzvah celebration of his daughter, who is the youngest child. This obligation, debtor maintains, is not in the nature of support for his daughter and consequently is dischargeable. While conceding that her Bat Mitzvah is an "important event" in her life, debtor asserts that a party costing $5,000 to celebrate the

---

[4.] It is not clear from the record whether debtor fulfilled his obligation to pay each child's tuition to attend Hebrew school. To the extent debtor asserts that his obligation to pay such tuition is dischargeable, we conclude that it is excluded from discharge by § 523(a)(5) for the same reasons as is his obligation to pay for his daughter's Bat Mitzvah celebration.

event is an extravagance rather than a necessity.   While such a celebration may be desirable, he continues, it is not mandatory for members of the Jewish faith to go to such extremes.

The assertion that this debt is dischargeable is without merit.   The obligation is in the nature of support of debtor's daughter and falls within the scope of § 523(a)(5).

Whether an obligation is in the nature of support of one's child for purposes of § 523(a)(5) depends, among other things, on the function it serves. If an obligation serves to provide a dependent with a necessity of life, this indicates that said obligation was intended to provide support. *Gianakas*, 917 F.2d at 763.

There is no bright-line test for determining if an obligation serves to provide a dependent with a necessity of life.  The answer to whether an obligation so qualifies may vary from one situation to the next.  Something that is considered as a necessity for an affluent family, for instance, may be considered an extravagance for a family of lesser means.  A Bat Mitzvah party costing $5,000 may qualify as a necessity for the former and as an unnecessary extravagance for the latter.

While debtor and Sheryl Birenbaum arguably did not qualify as *nouveau riche* when they entered into the above settlement agreement, they hardly were penurious.   Their combined annual gross income from their employment was approximately $96,000. Debtor was making $72,000 per year while Sheryl Birenbaum was making about $24,000.

Evidence presented at trial persuades us that when they entered into the settlement agreement, debtor and Sheryl Birenbaum considered Bar or Bat Mitzvah parties for their

- 12 -

children as a necessity rather than as an indulgence or an extravagance.  They regarded such a party to be as crucial to a child's life as the religious ceremony itself.  Support for this conclusion is found in debtor's willingness to pay $5,000 for the Bar Mitzvah parties of each of his sons.  Had debtor considered such a party not to be essential, we have to wonder in light of his straitened financial situation at the time why he paid for the Bar Mitzvah celebrations.

Debtor cannot have it both ways.  He will not be heard to characterize a Bat Mitzvah celebration costing $5,000 as an unnecessary extravagance when he willingly paid for equally expensive Bar Mitzvah celebrations for his sons.

### Automobile Payments

Debtor was obligated by the settlement agreement to continue making monthly lease payments until September of 2001 for an automobile Sheryl Birenbaum drove.  Thereafter, he was obligated to pay $400 per month for another six years for an automobile for her.

When the auto lease expired in September of 2001, Sheryl Birenbaum purchased an automobile for approximately $34,000.  She borrowed an unspecified amount from her father to cover a portion of the purchase price and took out an auto loan to pay the rest.  Debtor has contributed nothing towards the automobile she purchased.

Debtor denies that his obligation to make such payments was in the nature of support for Sheryl Birenbaum and the children.  The obligation, he insists, was in the

- 13 -

nature of equitable distribution and consequently is not excepted from discharge by § 523
(a)(5).

We disagree.  The function served by the obligation was to provide support for
Sheryl Birenbaum and the children.

As the primary residential parent, Sheryl Birenbaum was charged with providing for
her needs as well as the needs of the children on a daily basis.  Providing for such daily
needs required her to have an automobile.  She also needed it to get to her job and earn
a paycheck and to transport the children to and from.

Moreover, there was a considerable disparity in their incomes, with debtor earning
approximately three times as much as Sheryl Birenbaum.  Because she was the primary
residential parent and the children were young, Sheryl Birenbaum could not go out and
hold down a full-time job that would keep her away from the children for considerable
portions of the day.  Without debtor's required contribution, she could not have afforded
an automobile and could not have provided for certain of life's daily necessities for herself
and the children.

## – COUNT II –

### *The Loan From The Silvers*

Debtor and Sheryl Birenbaum borrowed $200,000 from the Silvers in 1994 to
purchase a residence for themselves and their children.  Except for a $50,000 payment
debtor made to the Silvers about one month before the divorce decree issued in July of
2000, the debt was not paid.

- 14 -

Although debtor and Sheryl Birenbaum were jointly liable for the debt, the Silvers brought two lawsuits against debtor alone for not repaying the loan.  Out of what probably was parental concern and affection for their daughter, the Silvers did not name Sheryl Birenbaum as a co-defendant in the lawsuits.

Little or nothing concerning the lawsuits can be gleaned from the record in this adversary action.  It is not clear, for instance, why two lawsuits rather than one were brought against debtor or whether they were brought in Florida or Pennsylvania.  All we know is that the Silvers obtained two judgments against debtor alone which total $206,744.

The Silvers allege in Count II of the complaint in this adversary action that debtor agreed in the settlement agreement with Sheryl Birenbaum to assume *sole* responsibility for paying the debt they jointly owed to the Silvers.  They maintain that the debt is excepted from discharge by § 523(a)(5) of the Bankruptcy Code or, in the alternative, by § 523(a)(15).

The Silvers' assertion that the debt in question is excepted from discharge by § 523 (a)(5) is without merit.

It should be noted preliminarily that the debt owed to the Silvers by debtor, whether it arises from the loan transaction itself or the above judgments, typically would be discharged.  Debtor (and Sheryl Birenbaum) borrowed money from the Silvers and failed to pay it back.  The Silvers, however, take the position that this debt is atypical in some way.

- 15 -

For a debt to be excepted from discharge by § 523(a)(5), the debt must be: (1) in the nature of alimony, maintenance, or support; (2) owed to a spouse, former spouse, or a child of the debtor; and (3) incurred in connection with a separation agreement, a divorce decree or other order of a court of record, or a property settlement agreement. *Loper v. Loper (In re Loper)*, 329 B.R. 707, 707-08 (10th Cir. 2005).

At a minimum, the second of these requirements is not satisfied in this instance. The Silvers have failed to demonstrate that the debt they seek to have excluded from discharge was owed by debtor to Sheryl Birenbaum or to debtor's children.

There is no dispute that whereas debtor and Sheryl Birenbaum together owed a debt to the Silvers as a result of the 1994 loan transaction, debtor did not owe a debt *to Sheryl Birenbaum* as a result of that same transaction.[5]  It also is not disputed that debtor did not owe a debt *to Sheryl Birenbaum* as a result of the entry in the year 2003 of the above judgments in favor of the Silvers and against debtor.

According to the Silvers, debtor owes a debt *to Sheryl Birenbaum* which is excluded from discharge by § 523(a)(5) as a result of a promise they contend debtor made to Sheryl Birenbaum in the settlement agreement entered into on June 20, 2000.  The Silvers specifically maintain that debtor assumed Sheryl Birenbaum's obligation to them when he agreed to apply proceeds realized from the sale of property debtor alone owned to satisfy the debt Sheryl Birenbaum owed to them in connection with the 1994 loan transaction.[6]

---

[5.]  No allegation is made indicating that the Silvers will pursue their daughter individually for payment in full and leave their daughter with a claim (contingent) against debt as a consequence.

[6.]  For reasons that are not known, debtor made no such payment to the Silvers.

This tortured reasoning is seriously flawed in numerous respects.

It seems peculiar, to say the least, that the Silvers seek a determination that a debt allegedly owed by debtor to Sheryl Birenbaum instead of them is excluded from discharge by § 523 (a)(5). Sheryl Birenbaum, who is a party to this adversary action, easily could have asserted such a theory on her own behalf in Count I of the complaint.

We will not, however, base our decision concerning the cause of action asserted by the Silvers in Count II of the complaint exclusively on this. We previously rejected a similar argument raised by debtor that Sheryl Birenbaum lacked standing to seek a determination that the debt owed by debtor to create a college education fund for their eldest son was excepted from discharge by § 523(a)(5). According to debtor, Sheryl Birenbaum lacked standing because the debt was owed not to her, but to their son. Consistency would seem to require, at least for the sake of argument, that we do the same here. What matters is whether the debt in question falls within the confines of § 523(a)(5), not whether the debt is owed to the party seeking such a determination.

There are yet other fatal flaws in the cause of action the Silvers assert against debtor in Count II of the complaint. For instance, the assertion that debtor promised in the settlement agreement to assume and pay the debt Sheryl Birenbaum owed to her parents as a result of the 1994 loan transaction is factually incorrect. Our review of the official transcript setting forth the settlement agreement leads us to conclude that debtor merely agreed as to the *manner* in which their joint debt to the Silvers would be paid: debtor agreed that the net proceeds realized from the sale of a specific piece of property

- 17 -

he owned would be used to pay that joint debt.  Debtor did not agree to assume Sheryl Birenbaum's liability to her parents.

Had debtor and Sheryl Birenbaum intended for debtor to assume and pay Sheryl Birenbaum's obligation to her parents, we would expect some indication in the settlement agreement that debtor would hold Sheryl Birenbaum harmless with respect to that specific liability.  There is no such indication in the settlement agreement.

Because there is nothing to support the conclusion that debtor owes such a debt to Sheryl Birenbaum as a result of the settlement agreement, there is no basis for concluding that such a (putative) debt is excepted from discharge by § 523(a)(5) of the Bankruptcy Code.

As was noted previously, the Silvers alternatively maintain that the debt in question is excepted from discharge by § 523(a)(15) of the Bankruptcy Code, which provides in part as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt -- ....
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record ...unless –
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.  11 U.S.C. § 523(a)(15).

The Silvers' effort to have the debt in question excluded from discharge by this provision fares no better than it did under § 523(a)(5).

For a debt to be excluded from discharge by this provision, it must at a minimum be: "not of the kind described in paragraph (5)"; and (2) incurred by the debtor in the course of a divorce or separation agreement, or in a divorce decree or other order of a court of record.

The second of these requirements is not satisfied in this instance.

If the debt the Silvers seeks to have excepted from discharge by § 523(a)(15) is the debt owed to them by debtor, the debt was not incurred in connection with the above divorce proceeding.  The debt arose as a result of the 1994 loan transaction or as a result of the judgments obtained in the year 2003 in their favor and against debtor.

If the debt the Silvers assert is excepted from discharge by § 523(a)(15) is the debt owed by debtor to Sheryl Birenbaum as a result of his alleged agreement to assume and pay the debt Sheryl Birenbaum owes to her parents as a result of the 1994 loan transaction, we have determined that no such debt exists.  Debtor did not agree to assume that debt.

To summarize what we have determined in this memorandum opinion, we conclude that judgment must be entered in favor of Sheryl Birenbaum and against debtor with respect to Count I of the complaint in this adversary action.  Debtor's obligations for alimony and child support, for health insurance for Sheryl Birenbaum and the children, for a college education fund for each child, for the Bar and Bat Mitzvahs of each child and their

tuition for Hebrew school, and for an automobile for Sheryl Birenbaum are all excluded from discharge by § 523(a)(5) of the Bankruptcy Code.

We further conclude that judgment must be entered in favor of debtor and against Donald and Elaine Silver with respect to the debt they seek in Count II of the complaint to have excluded from discharge by virtue of § 523(a)(5) or § 523(a)(15).  The debt, whatever it is supposed to be, is dischargeable.

An appropriate order shall issue.

_____**/s/**_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

Dated: **July 7, 2006**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE:

| | | |
|---|---|---|
| **DAVID J. BIRENBAUM,** | : | **Bankruptcy No. 05-20640 BM** |
| | : | |
| | : | |
| **Debtor** | : | **Chapter 7** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **SHERYL BIRENBAUM, DONALD** | : | |
| **SILVER, and ELAINE SILVER,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **Adversary No. 05-2529 BM** |
| | : | |
| **DAVID J. BIRENBAUM,** | : | **Complaint  To  Determine The** |
| | : | **Dischargeability Of Debts And** |
| **Defendant** | : | **Objecting To Discharge** |

<u>**ORDER OF COURT**</u>

**AND NOW**, this <u>**7th**</u> day of <u>**July**</u>, 2006, in accordance with the foregoing memorandum opinion, it hereby is **ORDERED, ADJUDGED and DECREED** that judgment be and hereby is entered in favor of Sheryl Birenbaum and against debtor David J. Birenbaum with respect to Count I of the complaint in this adversary action.

It further is **ORDERED, ADJUDGED and DECREED** that judgment be and hereby is entered in favor of debtor David J. Birenbaum and against Donald and Elaine Silver with respect to Count II of the complaint in this adversary action.

It is **SO ORDERED**.

_____<u>**/s/**</u>_____

**BERNARD MARKOVITZ**

U.S. Bankruptcy Judge

Service of this Memorandum Opinion and Order of Court shall be made by the Case Administrator on Richard R. Tarantine, Esq., Donald R. Calaiaro, Esq., Jeffrey J. Sikirica, Esq., and Office of United States Trustee